IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT ANTHONY FORLINA | : |
| | : CIVIL ACTION |
| v. | : |
| | : NO. 16-2696 |
| JOHN DOE, ET AL. | : |

**MEMORANDUM**

**SURRICK, J.**                                                                                 **OCTOBER 11, 2019**

Presently before the Court are the Valley Forge Defendants' Motion to Dismiss (ECF No. 4), and Trooper Allaband's Motion to Dismiss (ECF No. 9). For the following reasons, the Valley Forge Defendants' Motion will be granted in part and denied in part, and Trooper Allaband's Motion will be granted in part and denied in part.

**I.   BACKGROUND**[1]

In this Section 1983 action, Plaintiff Robert Forlina brings civil rights and state law claims against a Pennsylvania State Police Trooper and various Defendants associated with Valley Forge Convention Center Partners, LP d/b/a Valley Forge Casino Resort (the "Valley Forge Casino") arising out of an incident that occurred at the Casino in January of 2015.[2] Plaintiff alleges that Defendants accosted him for being a "card counter" when Plaintiff was playing blackjack at the Valley Forge Casino. Plaintiff further alleges that both the Casino Defendants and Trooper Allaband acted in concert to deter card counting by making an example of Plaintiff, all for the purpose of advancing the financial interests of the Valley Forge Casino.

---

[1] For the purposes of this Motion, the factual allegations in Plaintiff's Complaint are taken as true. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989).

[2] Defendants include: the Valley Forge Casino; Valley Forge Casino employees John Doe, James Morace, Charles Petruzulli, and Richard Roe (the "Casino Defendants"); and Pennsylvania State Police Trooper Donald Allaband, Jr.

On January 18, 2015, Plaintiff visited the Valley Forge Casino in King of Prussia, Pennsylvania. (Compl. ¶¶ 13, 17, ECF No. 1.) Upon arriving, Plaintiff was required to show his driver's license, at which point he was given a "Daily Passport" card that authorized him to gamble at the Casino. (*Id.* ¶ 14-15.) Plaintiff again provided his identification in order to enter the gaming floor. (*Id.* ¶ 15.) Plaintiff stayed and gambled for ten hours, spending most of his time at the blackjack table. (*Id.* ¶ 17.) Plaintiff does not dispute that he was counting cards while playing blackjack. (*Id.* ¶ 18.) Card counting is a playing strategy used in blackjack where a player memorizes those cards that have been played face-up to determine the probability of those cards that remain in play. (*Id.* ¶ 18.)

Card counting, although not illegal in Pennsylvania, creates a statistical advantage for those who use it, and therefore the strategy is disliked and deterred by casinos, including the Valley Forge Casino. (*Id.* ¶ 20.) Plaintiff alleges that when casino personnel suspect an individual is counting cards, the casino will evict the player and further bar them from returning to that casino. (*Id.*)

Shortly after 1:00 p.m. on January 18, 2015, Defendants became suspicious that Plaintiff was counting cards. (*Id.* ¶ 24.) While Plaintiff was playing a hand at the blackjack table, Defendant John Doe asked Plaintiff "in a loud and accusing manner" to see his identification. (*Id.* ¶ 25.)[3] When Plaintiff asked why he needed to show identification, Doe responded that no reason was needed. (Compl. ¶ 28.) Plaintiff alleges that Doe's actions toward him were meant to harass, intimidate, and embarrass Plaintiff for counting cards. (*Id.* ¶ 27.)

---

[3] Although it is not entirely clear, John Doe may be the "Pit Supervisor" named Kyle Digris. (Casino Defs.' Reply 1, ECF No. 8.) Because the parties have not confirmed unequivocally the identification of John Doe, we will continue to refer to him as John Doe in this Memorandum.

Plaintiff left the blackjack table and noticed that Defendants Charles Petruzulli and James Morace, security guards for Valley Forge, were watching him as he walked through the Casino. (*Id.* ¶ 29.) Based on this, Plaintiff decided to cash out his chips and leave. (*Id.* ¶ 29.) As Plaintiff put his chips (allegedly over $1,000 worth) down on the cashier counter, Petruzulli and Morace approached him and asked for his identification. (*Id.* ¶ 30.) When Plaintiff again asked them why, they responded by telling the cashier to not cash out the chips. (*Id.* ¶ 31.) Plaintiff asked them to call the Gaming Commission, to which request they refused. (*Id.* ¶ 29.) Petruzulli and Morace instructed the cashier to physically cover the chips when Plaintiff tried to count them, and when they refused to give him a receipt for the chips, Plaintiff tried to take a photo of them with his cell phone, at which point Defendants threatened to take his phone away. (*Id.* ¶¶ 31-32.) At some point during this interaction, Trooper Allaband, who was stationed at the on-site Casino barracks, also came over to the cashier stand. (*Id.* ¶¶ 21, 30.) Things escalated from there. Plaintiff called "911" on his phone and told the operator that the Valley Forge Casino was stealing his money and chips. (*Id.* ¶ 34.) Trooper Allaband took the phone out of Plaintiff's hand and told the 911 operator that he was a state trooper and to ignore Plaintiff's request for help. (*Id.*)

Plaintiff then alleges that all Defendants "dragged" him from the cashier stand into a back room, "slammed" him against a concrete wall, searched him, took his cash, and then chained his ankles to a bench in the back room. (*Id.* ¶ 36.) Plaintiff was shackled to the bench for approximately 45 minutes, during which time he suffered a panic attack, and was not provided water despite his requests. (*Id.* ¶¶ 37-38.)

While Plaintiff was shackled to the bench, Defendants offered him a deal: if Plaintiff gave Defendants the money he won, then Plaintiff would not be charged with an offense. (*Id.* ¶

38.) Plaintiff was eventually issued a citation for defiant trespass under 18 Pa. Stat. and Cons. Stat. Ann. § 3503(b). (*Id*. ¶ 40) Defendants returned Plaintiff's cash, except for approximately $600-700, which Plaintiff alleges Defendants kept for themselves. (*Id.* ¶ 42.) Defendants then issued an eviction notice to Plaintiff and escorted him out of the Casino. (*Id*. ¶ 43.)

On September 17, 2015, after a trial held in the Court of Common Pleas of Montgomery County, Plaintiff was found not guilty of defiant trespass. (*Id.* ¶ 44.) Plaintiff alleges that, as a result of Defendants' actions, he suffered physical injuries, severe emotional distress, and damage to his reputation. (*Id*. ¶¶ 46-48.)

Plaintiff alleges that the events described in his Complaint were the result of Valley Forge Casino's practice of harming, humiliating, and harassing card counters in order to deter players from counting cards—a practice allegedly intended to advance the financial interests of the Casino. (*Id.* ¶¶ 20, 23, 27.) Plaintiff alleges that neither Trooper Allaband nor the Casino Defendants ever suspected him of any crime. (*Id.* ¶ 45.) He alleges that while Defendants contend that they asked for his identification because they believed him to be under the legal gambling age, they actually confronted him because of his use of the card counting strategy, particularly because he had been winning. (*Id.* ¶¶ 24-26.) The Complaint states that Pennsylvania State Police are legally required to maintain a barracks on the premises of the Valley Forge Casino, and that the Casino pays the entirety of the salaries of the State Troopers stationed there through its payments to the Commonwealth under the gaming laws. (*Id.* ¶¶ 21-22.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), "[a] pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to

4

relief." Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. A motion under Rule 12(b)(6) tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Courts need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

In determining whether dismissal of the complaint is appropriate, courts use a two-part analysis. *Fowler*, 578 F.3d at 210. First, courts separate the factual and legal elements of the claim and accept all of the complaint's well-pleaded facts as true. *Id.* at 210-11. Next, courts determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). Given the nature of the two-part analysis, "'[d]etermining whether a complaint states a plausible claim for relief will

5

. . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

### III. DISCUSSION

Plaintiff's Complaint alleges the following counts against all Defendants: civil rights violations pursuant to 42 U.S.C. § 1983 (false arrest, false imprisonment, illegal search, malicious prosecution, and malicious abuse of process) (Count 1); assault and battery under Pennsylvania law (Count 2); false arrest and false imprisonment under Pennsylvania law (Count 3); malicious prosecution under Pennsylvania law (Count 4); and a claim for punitive damages (Count 5).

Trooper Allaband seeks dismissal of all counts asserted against him, contending that Plaintiff's Section 1983 claims fail because Trooper Allaband did not commit any constitutional violations. Trooper Allaband also contends that the state law claims are barred by the doctrine of sovereign immunity. The Casino Defendants also seek dismissal of all counts asserted against them. The Casino Defendants argue that Plaintiff "fails to offer any evidence" implicating the Valley Forge Casino employees, and that instead, Plaintiff's claims should be directed at Trooper Allaband. We will first address Trooper Allaband's Motion and then proceed to the arguments raised by the Casino Defendants.

#### A. Plaintiff's Section 1983 Claims Against Trooper Allaband

Section 1983 "provides a remedy for deprivations of rights secured by the Constitution and the laws of the United States when that deprivation takes place 'under the color of any statute, ordinance, regulation, custom, or usage, of any State or Territory.'" *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982) (quoting 42 U.S.C. § 1983). To state a claim under Section

6

1983, a plaintiff must (1) allege a violation of a right secured by the Constitution and the laws of the United States, and (2) show that the alleged deprivation was committed by a person acting under color of state law. *Abraham v. Raso*, 183 F.3d 279, 287 (3d Cir. 1999) (citation omitted). For the purposes of a Section 1983 action, a defendant acts under color of state law when he "exercise[s] power possessed by virtue of state law and made possible only because [he] is clothed with the authority of state law." *Id.* (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)). "To establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

In Count 1 of the Complaint, Plaintiff asserts claims against Trooper Allaband for false arrest, false imprisonment, illegal search, malicious prosecution, and malicious abuse of process, all in violation of the Fourth and Fourteenth Amendments to the United States Constitution, and in violation of 42 U.S.C. § 1983.

### 1. *False Arrest, False Imprisonment, and Malicious Prosecution*

Trooper Allaband contends that Plaintiff's claims for false arrest, false imprisonment, and malicious prosecution should be dismissed because he had probable cause to arrest Plaintiff for defiant trespass. (Allaband Mot. 6-7.) To establish a claim for false arrest or false imprisonment, Plaintiff must show that the arrest or detention occurred without the existence of probable cause. *Murphy v. Bendig*, 232 F. App'x 150, 153 (3d Cir. 2007).[4] The absence of

---

[4] False arrest and false imprisonment claims are essentially the same, except that false arrest requires a showing of arrest and false imprisonment requires a showing of detention. *Olender v. Twp. of Bensalem*, 32 F. Supp. 2d 775, 791 (E.D. Pa. 1999). Both claims require a plaintiff to prove that the arresting officer lacked probable cause. *Sheedy v. City of Phila.*, 184 F. App'x 282, 284 (3d Cir. 2006).

7

probable cause is also required to state a claim for malicious prosecution under Section 1983. *Johnson v. Knorr,* 477 F.3d 75, 82 (3d Cir. 2007).[5]

Probable cause is found "where the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *United States v. Cruz*, 910 F.2d 1072, 1076 (3d Cir. 1990); *see also Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."); *Wright v. City of Phila.*, 409 F.3d 595, 602 (3d Cir. 2005) (noting that probable cause to arrest exists "if at the moment the arrest was made the facts and circumstances within the officers' knowledge . . . were sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense" (internal quotations and citations omitted)).

Trooper Allaband contends that he had probable cause to arrest Plaintiff for defiant trespass because, despite repeated requests by the Casino Defendants, Plaintiff refused to leave the Casino. Under Pennsylvania law, a person is guilty of defiant trespassing if "knowing that he is not licensed or privileged to do so, he enters *or remains* in any place" after notice of trespass was communicated to him. 18 Pa. Cons. Stat. Ann. § 3503(b)(1)(i)(emphasis added). An

---

[5] To state a claim for malicious prosecution under Section 1983, a plaintiff must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Knorr,* 477 F.3d at 82. It is customarily the role of a prosecutor or the District Attorney to initiate a criminal proceeding. However, this does not shield police officers from liability for malicious prosecution claims. "'Although prosecutors rather than police officers are generally responsible for initiating criminal proceedings, an officer may, however, be considered to have initiated a criminal proceeding if he or she knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed decision.'" *Henderson v. City of Phila.*, 853 F. Supp. 2d 514, 518 (E.D. Pa. 2012) (quoting *Brockington v. City of Phila.*, 354 F. Supp. 2d 563, 569 (E.D. Pa. 2005)).

8

individual is guilty of defiant trespass if he is asked to leave by a property owner and refuses to do so. *See Com. v. Downing*, 511 A.2d 792, 793-94 (Pa. 1986). The problem with Trooper Allaband's argument is that, according to the allegations in Plaintiff's Complaint, Plaintiff was never asked to leave the Casino. The Complaint does not contain any factual allegations related to either Trooper Allaband or any of the Casino Defendants requesting that Plaintiff leave the Casino. If Plaintiff was never asked to leave, then a reasonable person in Trooper Allaband's position would not believe that Plaintiff was committing the offense of defiant trespass. According to Plaintiff's allegations, Trooper Allaband lacked probable cause to arrest Plaintiff. If after discovery is completed Trooper Allaband produces evidence demonstrating that Plaintiff was asked to leave and refused—he may renew his argument in a motion for summary judgment. However, at this stage, based upon the allegations in the Complaint, which we view in the light most favorable to Plaintiff, we are satisfied that Plaintiff states claims for false arrest, false imprisonment, and malicious prosecution.[6] Trooper Allaband's Motion to Dismiss these claims will therefore be denied.

### 2. *Illegal Search*

Plaintiff alleges that Defendants conducted an illegal search of him after they "dragged" him to the back room and "slammed him against the concrete wall." (Compl. ¶ 36.) Trooper Allaband argues that Plaintiff's claim for illegal search under Section 1983 should be dismissed because he had probable cause to arrest Plaintiff for the offense of defiant trespass, and that the subsequent search was simply a search incident to a lawful arrest.

To state a claim for illegal search under Section 1983, a plaintiff must allege that the search was in fact illegal. *Gresh v. Godshall*, 170 F. App'x 217, 220-21 (3d Cir. 2006). Under the Fourth Amendment, warrantless searches are "per se unreasonable . . . subject only to a few

---

[6] Trooper Allaband makes no other arguments in support of dismissal of these claims.

specifically established and well-delineated exceptions." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (internal quotation marks omitted). One of those exceptions is that a search incident to a lawful custodial arrest requires no additional justification because it is the fact of the lawful arrest which establishes the authority to search under the Fourth Amendment. *United States v. Robinson*, 94 S. Ct. 467, 477 (1973); *United States v. Bush*, 647 F.2d 357, 366 (3d Cir. 1981).

As we have already concluded, Plaintiff sufficiently alleges that Trooper Allaband lacked probable cause to arrest Plaintiff for defiant trespass. Plaintiff further alleges that the search to which he was subjected was unlawful because it was not premised on a lawful arrest, probable cause, or any other legal justification. Accordingly, Trooper Allaband's Motion to Dismiss Plaintiff's illegal search claim will be denied.

### 3. Abuse of Process

Trooper Allaband argues that Plaintiff fails to allege facts sufficient to state a claim for abuse of process, and that the claim should therefore be dismissed. To state a claim for abuse of process under Section 1983, a plaintiff must allege that the defendant perverted the legal process, using it for a purpose other than that intended by law. *Napier v. City of New Castle*, 407 F. App'x 578, 582 (3d Cir. 2010) (citation omitted). Abuse of process is not concerned with what *led* to the prosecution – rather, the plaintiff must establish that the defendant perverted the proceedings *after* they were initiated. *Rose v. Bartle*, 871 F.2d 331, 350 n.17 (3d Cir. 1989); *see also Gebhart v. Steffen*, 574 F. App'x 156, 159-60 (3d Cir. 2014) (noting there is no action for abuse of process when the process is used for the purpose for which it is intended even if there is an incidental motive or spite or ulterior purpose of benefit to the defendant); *see also Jenn-Ching Luo v. Owen J. Roberts Sch. Dist.*, 737 F. App'x 111, 116 (3d Cir. 2018) ("The gravamen of a

10

malicious abuse of process claim is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish." (quoting Restatement (Second) of Torts § 682 cmt. a (1977))).

We note initially that in Plaintiff's Response to Trooper Allaband's Motion to Dismiss, Plaintiff did not address the arguments raised by Trooper Allaband about dismissal of the abuse of process claim. We assume, therefore, that Plaintiff no longer wishes to proceed with this claim. However, even if he did, we nevertheless conclude that dismissal of the claim is appropriate.

Plaintiff alleges that Defendants issued a "fabricated criminal citation" to harass Plaintiff and to make an example of him to other patrons who use card counting strategies, and not for the legitimate reason of bringing Plaintiff to justice. (Compl. ¶ 41.) These allegations do not support a claim for abuse of process. The Complaint contains no allegations about Defendants' misuse of the process after the defiant trespass charge was initiated. *See Talbert v. Ciglar*, No. 18-2518, 2019 WL 653219, at *5 (E.D. Pa. Feb. 15, 2019) (concluding that plaintiff failed to allege abuse of process claim where he claimed merely that defendant improperly initiated proceedings); *Ference v. Twp. of Hamilton*, 538 F. Supp. 2d 785, 798 (D.N.J. 2008) ("To establish [an abuse of process] claim, there must be some proof of a definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process."). Plaintiff fails to plead a plausible claim for abuse of process under Section 1983. This claim will be dismissed.[7]

---

[7] Trooper Allaband also argues that Plaintiff's conspiracy claim should be dismissed. However, Plaintiff does not assert a conspiracy claim against Defendants. Rather, as explained below, Plaintiff alleges that a conspiracy existed between Trooper Allaband and the Casino

11

## B. Plaintiff's State Law Claims Against Trooper Allaband

Plaintiff asserts state law claims against Trooper Allaband for assault and battery (Count 2), false arrest and false imprisonment (Count 3), and malicious prosecution (Count 4). Trooper Allaband argues that these should all be dismissed because they are barred by sovereign immunity.

Under the doctrine of sovereign immunity, the Commonwealth and its officials and employees, acting within the scope of their duties, are immune from suit unless the immunity is specifically waived by the General Assembly. 1 Pa. Con. Stat. § 2310.[8] The General Assembly has waived sovereign immunity in nine categories of actions. *See* 42 Pa. Stat. Ann. § 8522(b).[9] Intentional torts and civil rights actions are not within the narrow exceptions set forth by the statute. *See id.; see also Faust v. Com., Dep't of Revenue*, 592 A.2d 835, 839-40 (Pa. Commw. Ct. 1991). Therefore, employees of the Commonwealth, such as State Police troopers, are immune from intentional tort and civil rights actions. *See Greenberg v. Caesars Entm't Corp.*, No. 14-4796, 2015 WL 2069411, at *2 (E.D. Pa. May 5, 2015) (citing cases and stating that "[s]tate and federal cases in Pennsylvania overwhelmingly conclude that the Commonwealth and its officials are immune from claims based on intentional conduct when the officials were acting within the scope of their duties."); *see also Faust*, 592 A.2d at 839 (holding that intentional torts

---

Defendants as required to state a Section 1983 claims against the Casino Defendants. (*See infra* Section III.C.)

[8] Section 2310 states, in relevant part that "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa. Con. Stat. § 2310.

[9] These categories include: vehicle liability; medical-professional liability; care, custody and control of personal property; Commonwealth real estate, highways and sidewalks; potholes and other dangerous conditions; care, custody or control of animals; liquor store sales; National Guard activities; and toxoids and vaccines. 42 Pa. Stat. Ann. § 8522(b).

and civil rights actions are not within the narrow exceptions to sovereign immunity of Commonwealth and its officials); *Litzenberger v. Vanim*, No. 01-5454, 2002 WL 1759370, at *5 (E.D. Pa. July 31, 2002) (concluding that state troopers enjoyed sovereign immunity against intentional tort claims).

The state law claims asserted by Plaintiff against Trooper Allaband are all intentional torts and therefore do not fall within the enumerated exceptions to sovereign immunity. Plaintiff does not dispute this. Rather, Plaintiff argues that the doctrine of sovereign immunity does not apply here because Trooper Allaband was not acting within the scope of his employment. Plaintiff is correct that the doctrine of sovereign immunity does not apply when a Commonwealth employee acts outside the scope of his or her employment. *See La Frankie v. Miklich*, 618 A.2d 1145, 1149 (Pa. Commw. Ct. 1992). However, Plaintiff's own allegations do not support his argument. In his Complaint, Plaintiff alleges that "[a]t all times relevant hereto, defendant—Trooper Allaband—was employed by the Pennsylvania State Police and who was an agent, servant, workman, and/or employee of the Pennsylvania State Police and of the Commonwealth of Pennsylvania." (Compl. ¶ 12.) Nowhere does Plaintiff allege that Trooper Allaband was acting outside the scope of his duties as a state trooper.

In the face of these allegations, Plaintiff cannot now maintain that sovereign immunity does not bar his state law claims. Indeed, even in the case relied on by Plaintiff, *La Frankie,* the court determined that sovereign immunity barred state law claims because the plaintiff admitted in his complaint that the Commonwealth employee acted within the scope of his employment. *La Frankie,* 618 A.2d at 1149. Accordingly, Plaintiff's state law claims against Trooper Allaband are barred by the doctrine of sovereign immunity and will be dismissed.

### C. Plaintiff's Section 1983 Claims against the Casino Defendants

As we noted above, to establish a Section 1983 violation, a plaintiff must demonstrate that: (1) the defendant deprived the plaintiff of a right secured by the Constitution or the laws of the United States; and (2) the defendant was acting under color of state law. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006). Acting under color of state law "requires that one liable under § 1983 have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011). Because the analysis with respect to individuals is different from the analysis with respect to corporate entities, we will address the claims against the individual Casino Defendants separately from the claims asserted against the Valley Forge Casino itself.

#### 1. Individual Casino Defendants – John Doe, James Morace, Charles Petruzulli, and Richard Roe

Generally, private individuals do not act under color of state law, and therefore, are not liable under Section 1983. However, private individuals may be treated as state actors for purposes of Section 1983 in certain circumstances. *See Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005). One such circumstance is when the private actor willfully participates in a joint action or conspiracy with the state actor to deprive the plaintiff of a constitutional right. *See Abbott v. Latshaw*, 164 F.3d 141, 147-48 (3d Cir. 1998) ("Although not an agent of the state, a private party who willfully participates in a joint conspiracy with state officials to deprive a person of a constitutional right acts under color of state law for purposes of § 1983." (internal quotation marks omitted)); *see also Luck v. Mount Airy # 1, LLC*, 901 F. Supp. 2d 547, 562-63 (M.D. Pa. 2012) (denying a motion to dismiss a Section 1983 claim where the plaintiff

sufficiently alleged that the state troopers and casino security guards conspired to violate the plaintiff's constitutional rights).

To properly allege a conspiracy as a basis to hold a private party accountable as a state actor under Section 1983, a plaintiff must allege that there was an agreement, understanding, or "meeting of the minds" to violate the plaintiff's rights. *Startzell v. City of Phila.*, 533 F.3d 183, 205 (3d Cir. 2008) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)). The Complaint should contain specific allegations to infer an agreement or understanding between the private and state actor defendants. *See Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 179 (3d Cir. 2010).

The individual Casino Defendants argue that all of Plaintiff's allegations of mistreatment, if true, were at the hands of Trooper Allaband and that they played no role in his being detained, arrested, chained, searched, or charged with defiant trespass. Defendants contend that all Section 1983 claims should therefore be dismissed against them. Plaintiff alleges that the individual Casino Defendants—John Doe, James Morace, Charles Petruzulli, and Richard Roe—all acted in concert and/or in a conspiracy with Trooper Allaband to deprive Plaintiff of his constitutional rights, and that as a result of the conspiracy, Plaintiff's Section 1983 claims may proceed.

Here, Plaintiff has alleged sufficient facts in his Complaint to maintain a Section 1983 claim against the individual Casino Defendants. Specifically, Plaintiff alleges that Defendants acted in concert and conspired with the Pennsylvania State Police and Trooper Allaband to deter card counting by making an example of Plaintiff. He alleges that he was a victim of this conspiracy, and that the individual Casino Defendants, together with Trooper Allaband, dragged Plaintiff to a back room, slammed him into a wall, chained him to a bench, searched him, took his money, and fabricated a charge against him. Plaintiff also alleges that the individual Casino

15

Defendants conspired and agreed to fabricate the charges against him for the purpose of harassing him and as a means of justifying their treatment of him in the Casino, *i.e.*, the alleged constitutional violations of false arrest, imprisonment, illegal search, and malicious prosecution. Plaintiff has sufficiently alleged the existence of a conspiracy involving state action and a deprivation of his civil rights by the conspirators in furtherance of the conspiracy. The individual Casino Defendants' request to dismiss the Section 1983 claims will be denied.

### 2. *Corporate Casino Defendant -- Valley Forge Casino*

The analysis is different with regard to the corporate Defendant, the Valley Forge Casino. In addition to showing that the individual Casino Defendants were acting under color of state law, Plaintiff must also show that the alleged conspiracy was the result of a Valley Forge Casino custom or policy. It is well established that a municipality cannot be held liable in a Section 1983 action under a theory of *respondeat superior*. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir. 2006). Rather, the plaintiff must show that the municipality itself, through the implementation of a policy, custom, or practice, caused the constitutional violation. *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996). The standard for municipal liability in civil rights actions espoused in *Monell* applies equally to private corporations. *Victory Outreach Ctr. v. Melso*, 371 F. Supp. 2d 642, 646 (E.D. Pa. 2004); *Thomas v. United States Airways*, No. 13-6121, 2014 WL 1910245, at *4 (E.D. Pa. May 13, 2014) (applying *Monell* to Section 1983 claim asserted against private airline); *see also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003) (applying *Monell* to a private company providing medical services to a state prison pursuant to a local government contract).

Plaintiff has not alleged that the Valley Forge Casino had a policy, custom, or practice that was the moving force behind Plaintiff's constitutional harm. Rather, Plaintiff alleges that

16

the Casino Defendants and Trooper Allaband "acted in concert" and engaged in a "conspiracy" to violate Plaintiff's constitutional rights. This is not sufficient to state a *Monell* claim against the corporate Casino. *See Thomas*, 2014 WL 191024, at *4 (granting private airline's motion to dismiss Section 1983 claim where plaintiff merely alleged a conspiracy, and not that the conspiracy was a result of an airline custom or policy); *Luck*, 901 F. Supp. 2d at 564 (granting Casino defendant's motion to dismiss Section 1983 claim because the plaintiff did not allege that the casino had a policy or custom that caused the alleged violation of the plaintiff's constitutional rights). Accordingly, Plaintiff's Section 1983 claims against the Valley Forge Casino will be dismissed.

### D. Plaintiff's State Law Claims Against the Casino Defendants

Plaintiff asserts state law claims of assault and battery (Count 2), false arrest and false imprisonment (Count 3), and malicious prosecution (Count 4) against the Casino Defendants. The Casino Defendants seek dismissal of these claims, making only one argument—that they were not involved in the torts that comprise Plaintiff's state law claims. Specifically, they contend that there is no "evidence" of contact or involvement between Plaintiff and any Casino Defendant and that Plaintiff's tort claims are more properly alleged against Trooper Allaband. Defendant's argument confuses not only Plaintiff's allegations, but also Plaintiff's burden on a motion to dismiss.

In support of his claim for assault and battery, Plaintiff alleges that all Defendants, including the individual Casino Defendants, "put plaintiff in fear of and committed painful and offensive bodily contact with Plaintiff, including forcibly dragging [him] to the back room, throwing him against the wall, and shackling him to the bench." (Compl. ¶ 56.) In support of his claim for false arrest/false imprisonment, Plaintiff alleges that all Defendants, including the

17

Casino Defendants, "arrested and imprisoned [him] without probable cause or any other legal justification." (*Id*. ¶ 59.) In support of his claim for malicious prosecution, Plaintiff alleges that the acts of all Defendants, including the Casino defendants, caused Plaintiff to be improperly charged and prosecuted with defiant trespass. (*Id*. ¶ 62.) Contrary to the Casino Defendants arguments, Plaintiff's allegations do not solely involve conduct by Trooper Allaband. Plaintiff's Complaint describes tortious conduct by all Defendants.

The Casino Defendants argue that the evidence shows that they were not involved in the conduct that constitutes Plaintiff's state law tort claims. Specifically, they contend that surveillance evidence corroborates their innocence. At the motion to dismiss stage, we are limited to reviewing "the allegations contained in the complaint, exhibits attacked to the complaint, and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Although not relevant here, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Id*. (emphasis added). The Casino Defendants' reliance on surveillance video and other exhibits such as incident reports and witness statements to support their arguments in favor of dismissal are misplaced. That is evidence that the Court may not consider at this stage of the proceedings. The Casino Defendants are free to renew their arguments and present this evidence to the Court after discovery has been completed. At this time, the Casino Defendants' request to dismiss the state law claims will be denied.[10]

---

[10] In Pennsylvania, employers like the Valley Forge Casino, may be held vicariously liable for the acts of their employees under the doctrine of *respondeat superior*. *See Spitsin v. WGM Transp., Inc.*, 97 A.3d 774, 777-80 (Pa. Super. Ct. 2014) (discussing Pennsylvania's evolving treatment of the *respondeat superior* doctrine). An employer's liability depends on whether the employee was acting within the scope of his employment. *Id.* The liability of the employer may extend even to intentional or criminal acts committed by the servant, particularly

### E. Punitive Damages against all Defendants

In Count 5, Plaintiff asserts a claim for punitive damages against all Defendants, alleging that their actions were "outrageous, wanton, willful and reckless." (Compl. ¶ 67.) Defendants argue that the facts alleged do not support a claim for punitive damages.

Under Pennsylvania law, punitive damages may be awarded "when the plaintiff has established that the defendant has acted in an outrageous fashion due to either the defendant's evil motive or his reckless indifference to the rights of others." *Phillips v. Cricket Lighters*, 883 A.2d 439, 445 (Pa. 2005) (citation omitted). "A defendant acts recklessly when 'his conduct creates an unreasonable risk of . . . harm to another [and] such risk is substantially greater than that which is necessary to make his conduct negligent.'" *Hutchison v. Luddy*, 870 A.2d 766, 771 (Pa. 2005) (quoting Restatement (Second) of Torts § 500).

Plaintiff alleges that Defendants conspired and agreed with each other to violate Plaintiff's constitutional rights by dragging him to the back room of the Casino, throwing him up against a wall, shackling him to a bench, and charging him with a crime that he did not commit, all without any justification. He claims physical and emotional damages as well as damage to his reputation. Plaintiff asserts that this was done not for the purpose of proper law enforcement, but rather to humiliate Plaintiff, make an example of him, and deter Plaintiff and others from card counting, which he contends is legal. Viewing these allegations as true, and in the light most favorable to Plaintiff, we conclude that a reasonable juror could find that this conduct was

---

where the nature of the job necessitates or at least contemplates the use of force. *Id.* (citations omitted); *see also Kossler v. Crisanti*, 564 F. 3d 181, 198 (3d Cir. 2009) ([I]t appears that liability for malicious prosecution under Pennsylvania law may be imposed on the basis of *respondeat superior*."); *Costa v. Roxborough Memorial Hosp.*, 708 A.2d 490, 493 (Pa. Super. Ct. 1998) (noting that whether the use of force was within the scope of employment is typically a question for the jury). According to the Complaint, the individual Casino Defendants were acting within the scope of their employment. Accordingly, the Valley Forge Casino may also be liable for the state law claims under the doctrine of *respondeat superior*.

outrageous, or at the least, recklessly indifferent to Plaintiff's rights. At this juncture, we will not dismiss Plaintiff's claim for punitive damages.

## IV. CONCLUSION

For the foregoing reasons, Trooper Allaband's Motion to Dismiss will be granted in part and denied in part. The Motion will be denied as to Plaintiff's Section 1983 claims of false arrest, false imprisonment, malicious prosecution, and illegal search, and as to Plaintiff's claim for punitive damages. The Motion will be granted as to Plaintiff's Section 1983 claim of abuse of process, the state law claims of assault and battery, false arrest and false imprisonment, and malicious prosecution. The Casino Defendant's Motion to Dismiss will also be granted in part and denied in part. The Motion will be denied as to Plaintiff's Section 1983 claims against the individual Casino Defendants, Plaintiff's state law claims against the individual Casino Defendants, Plaintiff's state law claims against the Valley Forge Casino, and as to Plaintiff's claim for punitive damages. The Motion will be granted as to Plaintiff's Section 1983 claims against the Valley Forge Casino.

An appropriate Order follows.

                **BY THE COURT:**

                _____
                **R. BARCLAY SURRICK, J.**